# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| JAY LEWIS BIGGS, | ) | CASE NO. 5:15-cv-2307 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| JOHN D. FERRERO, Stark County | ) | **AND ORDER** |
| Prosecuting Attorney, | ) | |
| | ) | |
| DEFENDANT. | ) | |
| | ) | |

Before the Court is the motion to dismiss filed by defendant, John D. Ferrero ("defendant" or "Ferrero"). (Doc. No. 7 ["Mot."].)[1] The motion is brought pursuant to Fed. R. Civ. P. 12(b)(1) (lack of subject matter jurisdiction), 12(b)(6) (failure to state a claim), and 12(b)(7) (failure to join a party). Pro se plaintiff, Jay Lewis Biggs ("plaintiff" or "Biggs"), has filed his opposition (Doc. No. 9 ["Opp'n."]),[2] and defendant has filed his reply (Doc. No. 11 ["Reply"]). For the reasons and to the extent set forth herein, the motion is granted.

## I. BACKGROUND

Jaydee Biggs, the four-month-old daughter of plaintiff, died some time between June 5 and June 6, 2006. On May 28, 2008, the Stark County Grand Jury indicted Biggs on two counts of aggravated murder with death penalty specifications, two counts of murder, one count of rape, and one count of endangering children, all arising from Jaydee's death. A jury found Biggs guilty as

---

[1] Plaintiff also filed a motion for summary judgment (Doc. No. 12), on which the Court suspended briefing pending resolution of the instant motion. (*See* Doc. No. 13.) That motion is rendered moot by this ruling.

[2] Plaintiff asserts that defendant improperly attached evidence to the motion to dismiss. (Opp'n at 173-174 [all page number citations herein are to the Page ID# assigned by the CMECF system].) But the only two attachments are the motion filed by plaintiff in state court, and the state court's ruling, both of which "are referred to in the complaint and are central to the claims contained therein[.]" *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) (citations omitted).

charged, and recommended that he serve a term of life imprisonment without the possibility of parole. By judgment entry filed December 5, 2008, the trial court sentenced Biggs to life in prison without parole, which was affirmed. *State v. Biggs*, No. 2008CA00285, 2009 WL 5108485 (Ohio Ct. App. Dec. 28, 2009). Direct appeal proceedings concluded on May 26, 2010, when the Ohio Supreme Court declined to accept the appeal. *State v. Biggs*, 927 N.E.2d 10 (Ohio 2010). Although plaintiff filed an unsuccessful application under Ohio R. App. P. 26(B) to reopen his appeal, he did not avail himself of Ohio's postconviction proceedings under Ohio Rev. Code § 2953.21.[3]

Represented by the Ohio Innocence Project ("OIP"), on November 7, 2012, Biggs filed in the state trial court a motion to release copies of Jaydee's autopsy tissue slides in order to evaluate his case for any possible postconviction proceedings. (Mot. Ex. A.)[4] The motion does not actually state any statutory, or other, basis for the motion.[5] This motion was denied on December 12, 2012. The state appellate court affirmed the decision and, on December 24, 2013, the Ohio Supreme Court declined jurisdiction. *State v. Biggs*, No. 2013CA00009, 2013 WL 3957574 (Ohio Ct. App. July 29, 2013), *appeal not allowed by State v. Biggs*, 999 N.E.2d 696 (Ohio 2013).

On November 10, 2015, Biggs filed this *pro se* action under 42 U.S.C. § 1983 alleging that defendant had violated his constitutional rights "by denying him access to biological evidence for

---

[3] At the time, § 2953.21 required that a postconviction petition be filed "no later than one hundred eighty days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication or, … one hundred eighty days after the expiration of the time for filing the appeal." According to the online docket of the direct appeal filed in the Fifth District Court of Appeals (of which this Court may take judicial notice), the transcripts were filed in the direct appeal on April 1, 2009.

[4] To be clear, this is not a case where that OIP stated that the motion was being "asserted in lieu of filing a Post-Conviction Petition or Motion for DNA testing, arguing that either of these motions would be premature until the defense medical experts completed their review." (Mot. Ex. B at 147.)

[5] In its ruling, the trial court noted that the motion was being "asserted in lieu of filing a Post-Conviction Petition or Motion for DNA testing, arguing that either of these motions would be premature until the defense medical experts completed their review." (Mot. Ex. B at 147.)

purposes of forensic testing." (Doc. No. 1 (Complaint) ["Compl."] ¶ 1.) In particular, Biggs seeks "tissue slides from Jaydee's autopsy, which are kept by the Stark County Coroner." (*Id.* ¶ 20.) To that end, he seeks an order of this Court "requiring that the [Stark County Prosecutor] release the evidence to [him] under a reasonable protocol regarding chain of custody and preservation of the evidence, in order that [he] can have the evidence tested at his own expense." (*Id.* ¶ 3.)

Although plaintiff's complaint is filled with legal assertions and conclusions, his actual claims for relief allege that, "[b]y refusing to release the tissue slides … the [Stark County Prosecutor] has deprived the Plaintiff of his liberty interests in utilizing state procedures to obtain reversal of his conviction and/or obtain a pardon and/or obtain a reduction of his sentence" -- in violation of his Fourteenth Amendment right to due process (*id.* ¶ 38), and his Eighth Amendment right to be free from cruel and unusual punishment (*id.* ¶ 40).

Biggs further elaborates that "the State tribunals used an inapplicable statute, that being O.R.C. § 2953.71 *et seq.*, Ohio's postconviction DNA testing statute." (*Id.* ¶ 29.) He asserts that "the question is whether the state procedures, as have been outlined by the State tribunals in the instant case, for pursuing a petitioner's postconviction right violate the petitioner's procedural due process rights." (*Id.* ¶ 34.) He claims that "when faced with the Plaintiff's request, the [state] courts determined that they had no clear standard or procedure at all for assessing whether the Plaintiff was entitled to the biological evidence sought." (*Id.*, citing the appellate decision at ¶¶ 12-13.)[6]

---

[6] The Fifth District Court of Appeals stated:

> {¶ 12} This matter presents an issue of first impression to this court. We conclude that given the issue of the trial court's jurisdiction and the lack of any statutory authority relative to this request, our standard of review of the trial court's decision is de novo "as a matter of law."

> {¶ 13} Because of the lack of statutory authority or specific rule, we are forced by analogy to review this motion by the standards set forth in R.C. 2953.73, 2953.74, and 2953.75 relative to DNA evidence.

*Biggs*, 2013 WL 3957574 at *2.

3

## II. DISCUSSION

### A.    Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citing authorities). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id*. at 556, n.3 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678-79. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. "The court need not, however, accept unwarranted factual inferences." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the deprivation of that right was committed by a person acting under color of state law." *Harbin-Bey v. Rutter*, 420 F. 3d

4

571, 575 (6th Cir. 2005) (citing *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988)).

Defendant's motion raises six separate arguments in support of dismissal:

1.  The Stark County Prosecuting Attorney is not the custodian of the evidence sought by Plaintiff such that this Court is incapable of granting the relief prayed for in Plaintiff's Complaint;

2.  Plaintiff's Complaint is barred by the applicable statute of limitations such that this matter is subject to dismissal;

3.  Plaintiff's Complaint seeks review of identical matters already determined by state courts such that this action is jurisdictionally barred under the *Rooker-Feldman* doctrine;

4.  Plaintiff's claims are barred under the doctrine of *res judicata*;

5.  Plaintiff has not been denied procedural due process such that Plaintiff has failed to state a claim upon which relief can be granted;

6.  Plaintiff has improperly pled the basis for injunctive relief.

(Mot. at 49-50.) While a number of the grounds asserted by defendant have merit, the Court will focus its analysis on defendant's procedural due process argument, which the Court believes is dispositive.

**B.      Failure to State a Claim**

Plaintiff is attempting to advance a challenge to Ohio's postconviction procedures, asserting that they fail to provide any means of access to biological evidence other than for DNA testing purposes (in which he claims to have no interest) and, therefore, result in a denial of procedural due process.

5

In bringing this claim under § 1983, plaintiff relies upon *Dist. Attorney's Office for the Third Judicial Dist. v. Osborne*, 557 U.S. 52, 129 S. Ct. 2308, 174 L. Ed. 2d 38 (2009)[7] and *Skinner v. Switzer*, 562 U.S. 521, 131 S. Ct. 1289, 179 L. Ed. 2d 233 (2011). Defendant argues that "the due process considerations afforded [by these cases] … should not now be expanded to mere generalizations which will result in neither exoneration of the innocent, nor identification of the guilty." (Mot. at 74.)

In *Osborne*, after the state court in Alaska had denied a state prisoner's postconviction request for release of biological evidence used to convict him so that it could be subjected to DNA testing, he brought a § 1983 action to compel release of the evidence. Osborne claimed he had a due process right to retest the DNA at his own expense, using new testing methods unavailable at the time of his trial.[8] The district court granted summary judgment in his favor. The Ninth Circuit affirmed, generally finding a postconviction due process right analogous to the right of access to exculpatory evidence prior to trial, as had been outlined in *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). In assuming without deciding that *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994)[9] did not bar Osborne's claim under § 1983, the Supreme Court ultimately concluded that the state's procedures did not violate his due process rights. The Court further concluded, contrary to the holding of the Ninth Circuit, that the *Brady* duty to disclose exculpatory evidence does not apply in the postconviction context, where there is

---

[7] Although Biggs asserts in his opposition brief that he is not relying on *Osborne*, that is not so. His complaint quite clearly references the case, asserting that it recognizes a "state created right." (Compl. ¶ 33, citing *Osborne*). He states: "the question is whether the state procedures, as have been outlined by the State tribunals in the instant case, for pursuing a petitioner's postconviction right violate the petitioner's procedural due process rights." (*Id.* ¶ 34.)

[8] In fact, Osborne's trial counsel had made the strategic choice not to test the DNA even under then-available testing methods.

[9] In *Heck*, the Court held that when a state prisoner seeks damages under § 1983, if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence[,] … the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487.

no longer a presumption of innocence. Declining Osborne's request to "recognize a freestanding right to DNA evidence untethered from the liberty interests" sought to be vindicated, *Osborne,* 557 U.S. at 72, the Supreme Court held that constitutionalizing any such substantive due process right would "place the matter outside the arena of public debate and legislative action." *Id.* at 73 (internal quotes and citation omitted). The Court noted:

> DNA evidence will undoubtedly lead to changes in the criminal justice system. It has done so already. The question is whether further change will primarily be made by legislative revision and judicial interpretation of the existing system, or whether the Federal Judiciary must leap ahead – revising (or even discarding) the system by creating a new constitutional right and taking over responsibility for refining it.

*Id.* at 74. The Supreme Court, however, did acknowledge a liberty interest in the nonarbitrary application of existing state procedures relating to postconviction access to evidence (that is, it recognized a procedural due process right tethered to existing state law), but it emphasized that federal courts may upset those state procedures "only if they are fundamentally inadequate to vindicate the substantive rights provided." *Id.* at 69. Alaska's postconviction procedures were found to be facially adequate, and, because Osborne had failed to fully exhaust the available postconviction procedures,[10] the Court concluded he could not meet his burden of showing them to be inadequate in practice. *Id.* at 71. ("without trying them [the procedures], Osborne can hardly complain that they do not work in practice").

Thus, *Osborne* teaches that there is no substantive due process right to DNA/biological evidence in the postconviction context, but, in appropriate, narrow circumstances, a federal court

---

[10] Osborne filed his § 1983 action while his state postconviction appeal remained pending and without filing a federal or state habeas claim relying on actual innocence. In addition, the Court noted that, when Osborne did request DNA testing, it was the type of testing that had been available at trial, not the testing he was seeking through his federal § 1983 action, and the state court eventually relied upon that fact to deny the testing.

may intervene under § 1983 to vindicate procedural due process rights under state statutes that already provide access to such evidence.

Biggs also cites *Skinner* for the proposition that "denying access to the tissue slides denied procedural due process, in violation of [his] constitutional rights." (Compl. ¶ 36.) But *Skinner* decided a much narrower issue, namely, the question reserved in *Osborne*. The Court held that "a postconviction claim for DNA testing is properly pursued in a § 1983 action." *Skinner*, 562 U.S. at 525. Even so, the Court also noted that its decision in *Osborne* had "left slim room for [a] prisoner to show that the governing state law denies him procedural due process." *Id.* The Court declined to address the merits of Skinner's claim, finding that this was "ripe for consideration on remand." *Id.* at 537. *Skinner* offers no basis for relief because it does not alter the holding of *Osborne* relative to the role of the courts versus the role of the legislature.[11]

_____

[11] The Court specifically declines to adopt Biggs' suggestion that *Skinner* stands for the broad proposition that a convicted person has an unfettered procedural due process right, under § 1983, to seek access to every kind of evidence from that person's criminal trial for postconviction re-evaluation of any and every kind. If *Skinner* were interpreted that broadly, there would be no end to the second-guessing that would ensue, and the principles of finality, judicial economy, and state sovereignty would be undermined. In fact, the discussion in *Skinner* seems to suggest that this is the proper conclusion. There, the Court addressed respondent's concern that a "vast expansion of federal jurisdiction … would ensue" if § 1983 claims for DNA testing were permitted. *Skinner*, 562 U.S. at 534-35. The Court was obviously not envisioning its ruling applying to anything beyond the type of DNA testing that Skinner sought, namely, testing of biological materials to prove that he was not the perpetrator, that he was actually innocent. In the instant case, Biggs wants Jaydee's autopsy slides because he believes they will show she had medical conditions, largely related to her premature birth, that could account for her death. In the motion he filed in state court, he argued: "If Jaydee's death was determined to be the result of natural causes, undiagnosed disease, or genetic defect – and not homicide – it would demonstrate not only that Jay Biggs is innocent but would show that Jaydee Bigg's [sic] death was a tragedy but not a homicide worthy of criminal charges." (Mot. Ex. A at 79-80.) Surely, this very theory could have been advanced as a defense at trial, but either was not advanced or was rejected. This Court does not sit to reexamine the substantive outcome of either the trial or the postconviction proceedings in state court. In addition, the Court notes that Biggs already unsuccessfully pursued a habeas petition before another judge of this Court.

The only case this Court has found that applies *Skinner* as broadly as Biggs would like is *Caswell v. Green*, 424 F. App'x 44 (2d Cir. 2011), where a state prisoner convicted of burglary sued his prosecuting attorneys under § 1983 to obtain two exhibits (a surveillance video and a Persistent Violent Offender Statement) that had been used at trial, but were not admitted into evidence. The district court dismissed the claim on the strength of *Heck*, *supra*; but the Second Circuit reversed citing *Skinner*, *inter alia*. After remand, Caswell's claims were actually rendered moot because the evidence he sought was voluntarily produced. The district court dismissed his claim with prejudice on summary judgment. This Court believes *Caswell* went too far, a conclusion that seems supported by the fact that no other circuit court has adopted its position. Because DNA is a unique brand of evidence – one that "has an unparalleled ability both to exonerate the wrongly convicted and identify the guilty[,]" *Osborne*, 557 U.S. at 55, it should be treated differently than every other kind of physical evidence. *Skinner* cannot, and should not, be applied broadly to cover all

8

Biggs has attempted to frame his claims very narrowly and as procedural in nature, arguing that Ohio's postconviction procedures offer him *no avenue* for relief and that the state court's application of Ohio's statute relating to DNA testing was inappropriate. To the extent Biggs is challenging a lacuna in Ohio's postconviction schema (*i.e.*, the lack of an avenue for other than DNA testing for its usual purposes), he is essentially asking this Court to legislate for Ohio, which *Osborne* specifically precludes.

In fact, the state courts did not deny Biggs procedural due process. Rather, the state trial court liberally evaluated his request for the release of biological samples under every available state statute.[12] In considering the appeal from this decision, the state appellate court, noting "the lack of statutory authority or specific rule [addressing Biggs' particular request]," determined that it would apply "by analogy" the following two-stage analysis for postconviction relief under the DNA statutes: "[T]he movant must first prove 'new DNA testing methods are now able to provide new information that was not able to be detected at the time of defendant's trial.' ... [and] the movant must show that the new testing would have been outcome-determinative at the original trial." *State v. Biggs*, No. 2013CA00009, 2013 WL 3957574, at *2 (quoting *State v. Prade*, 930 N.E.2d 287, 291 (Ohio 2010)). The appellate court analyzed the record before it and concluded: "[W]e find no evidentiary quality averments necessary to fulfill the first prong of *Prade*. There is no evidence of any new definitive tests. We therefore conclude appellant has failed to meet his

---

kinds of evidence, as Biggs urges, and *Caswell* permitted. Nonetheless, as discussed *infra*, even in the absence of legislative enactment, the state courts considered whether Biggs should be entitled to receive the evidence, using a test analogous to the test that would be applied if he were seeking DNA evidence.

[12] The motion that the OIP filed on behalf of Biggs did not rely upon *any* Ohio statute. Even so, the state court evaluated his request under both the general postconviction statute (*see* Ohio Rev. Code § 2953.21), even sua sponte addressing a possible ineffective assistance of counsel argument under that statute, and the more specific postconviction DNA testing statute (*see* Ohio Rev. Code §§ 2953.71-2953.83). (*See* Mot. Ex B at 152-158.) To the extent Biggs is arguing that the state court's denial of his postconviction access to the autopsy slides was erroneous, this Court does not sit to review that decision as if on appeal.

burden required for the resubmission of the tissue slides to his 'newly discovered' experts." *Id.* at
*3.

States are under no constitutional obligation to supply mechanisms for postconviction
relief; but when they choose to do so, the procedures followed must comport with due process and
provide a person a fair opportunity to assert those state-created rights. *See Evitts v. Lucey*, 469 U.S.
387, 393, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985). Here, Biggs received the procedural process
that he was due because he was given "a fair opportunity" to assert his rights even in the absence
of a specific controlling state statute or mechanism. Therefore, he fails to state a claim under §
1983 for violation of this constitutional right.

### III. CONCLUSION

For the reasons set forth herein, defendant's motion to dismiss (Doc. No. 7) is granted. The
Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could
be taken in good faith.

**IT IS SO ORDERED**.

Dated: March 24, 2017

_____

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

10